1  Joseph A. Kaufman, No. 228319
   Joshua M. Ullman, No. 309667
2  **LEMON LAW AID, INC.**
   117 E. Colorado Blvd., Suite 600
3  Pasadena, CA 91105
   Telephone: 626-219-1648
4  Facsimile: 626-768-7066
   joe@lemonlawaid.com
5
   Attorneys for Plaintiff WEISI ZHANG
6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| WEISI ZHANG, an individual, | Case No. LA CV18-02684 JAK (AGRx) |
| Plaintiff, | |
| v. | *Assigned for all purposes to the Hon. John A. Kronstadt.* |
| BMW OF NORTH AMERICA, LLC, and DOES 1 through 10, inclusive, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF WEISI ZHANG'S MOTION FOR $36,140.66 IN ATTORNEY'S FEES AND COSTS AS THE PREVAILING PARTY** |
| Defendants. | |
| | **[FILED CONCURRENTLY WITH NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS; DECLARATION OF JOSHUA M. ULLMAN; DECLARATION OF JOSEPH A. KAUFMAN [PROPOSED] ORDER]** |
| | Hearing Date: November 19, 2018<br>Time: 8:30 a.m.<br>Dept: 10B |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

# TABLE OF CONTENTS

I. INTRODUCTION ... 1

II. STATEMENT OF FACTS ... 1

III. ARGUMENT ... 3

    A. Under both the Song-Beverly Consumer Warranty Act and the Offer of Judgment, Plaintiff is Entitled to Recover Reasonable Attorneys' Fees and Costs ... 3

    B. The Court Should Use the Lodestar Method to Determine Plaintiff's Reasonable Attorney's Fees and Costs ... 4

        *1. Plaintiff's Requested Hourly Rate is Reasonable* ... 4

            *a. The Contingent Nature of the Fee Arrangement Makes Plaintiff's Requested Rate Reasonable* ... 6

            *b. The Skill Displayed by Plaintiff's Attorneys Support the Requested Rate* ... 6

        *2. The Actual Time Requested is Reasonable* ... 7

    C. The Attorney Fee Award Must Be Based on Actual Time Expended in Litigation and Should Not be Bound by the Amount of Recovery ... 9

    D. The Court Should Grant a .25 Multiplier Based on the Delay in Payment and the Results Obtained ... 10

    E. Plaintiff is Entitled to An Award of Fees and Costs Incurred for This Motion and For All Further Work Required To Complete the Prosecution of this Case ... 11

IV. CONCLUSION ... 12

## TABLE OF AUTHORITIES

*Blackwell v. Foley*, (N.D. Cal. 2010) 724 F.Supp.2d 1068

*Blum v. Stenson*, (1984) 465 U.S. 886

*Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2008) 523 F3d 973

*Carter v. Caleb Brett LLC*, (9th Cir. 2014) 757 F3d 866

*City of Burlington v. Dague* (1992) 505 US 557

*City of Oakland v. Oakland Raiders* (1988) 203 Cal. App.3d 78

Cal. Civ. Code § 1794(d)

*Combs v. City of Huntington, Tex.* (5th Cir. 2016) 829 F3d 388

*Cowan v. Prudential Ins. Co. of America* (2nd Cir. 1991) 935 F2d 522

*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967

*Edgerton v. State Personnel Bd.* (2000) 83 Cal.App.4th 1350

*Flitton v. Primary Residential Mortg., Inc.* (10th Cir. 2010) 614 F3d 1173

*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140

*Graham v. DaimlerChrysler*, (2004) 34 Cal.4th 553

*Hensley v. Eckerhart*, (1983) 461 US 424

*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359

*Jensen v. BMW of North America* (1995) 35 Cal.App.4th 112

*Ketchum v. Moses* (2001) 24 Cal.4th 1122

*La Mesa-Spring Valley School Dist. V. Otsuka* (1962) 57 Cal.2d 309

*Lealao v. Beneficial Cal. Inc.* (2000) 82 Cal.App.4th 19

*Martino v. Denevi* (1986) 182 Cal.App.3d 553

*Moreno v. City of Sacramento*, (9th Cir. 2008), 534 F.3d 1106

*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th at 990

*Nancy Goglin v. BMW of North America, LLC, et al.* (2016) 4 Cal.App. 5th 462

*Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485

*Perdue v. Kenny A. (2010)* 559 US 552

*Rader v. Thrasher* (1962) 57 Cal.2d 244

*Robertson v. Fleetwood Trailers of California, Inc.* (2006) 144 Cal.App.4th 785

*Serrano v. Priest*, (1977) 20 Cal. 3d 25 (*Serrano III*)

*Serrano v. Unruh* (1982) 32 Cal.3d 621

*Strange v. Monogram Credit Card Bank of Georgia* (7th Cir. 1997) 129 F3d 943

*Sommers v. Erb* (1992) 2 Cal.App.4th 1644

*Trevinu v. Gates*, (9th Cir. 1996) 99 F.3d 911

## I. INTRODUCTION

This motion for attorney's fees and costs is brought pursuant to the Song-Beverly Consumer Warranty Act ("SBCWA" or "Act") and the Offer of Judgment between plaintiff Weisi Zhang ("Plaintiff") and BMW of North America, LLC ("BMWNA"), whereby it was stipulated that plaintiff is entitled to recover her reasonable attorney's fees and costs in a single noticed motion as the prevailing party in the action. Plaintiff has and will incur $28,376.50 in attorney's fees and $536.03 in costs in successfully prosecuting this action. Declaration of Joshua M. Ullman ("Ullman Decl.") ¶ 2. With a .25 multiplier, plaintiff seeks an attorney fee and costs award of $36,140.66. *Id.*

## II. STATEMENT OF FACTS

Plaintiff leased a brand new 2016 BMW X5 on December 4, 2015. Ullman Decl. ¶ 3. While plaintiff believed she leased a safe and reliable vehicle, it turned out that the vehicle suffered from several defects and caused nothing but wasted time, energy, and stress. Since the time plaintiff took possession of the vehicle, it was serviced at least five ("5") times for drivetrain malfunctions, failures to charge properly, battery failure, check engine lights, fuel tank pressure sensor failure, HV battery concerns, and other defects that substantially impaired plaintiff's use, value, and safety. *Id.* Furthermore, the vehicle was down for service by reason of defects at BMWNA authorized dealerships for at least sixty-five ("65") days within the first thirty-thousand ("30,000") miles of ownership. *Id.* Thus, the subject vehicle plainly qualified for a repurchase pursuant to the SBCWA.

In addition to the multitude of repairs and days out of service for the same defects, BMWNA's field technical specialists inspected the vehicle on three separate occasions during this same time period. *Id.* In doing so, BMWNA was clearly aware of the concerns plaintiff had yet chose to avoid complying with the Act. As such, BMWNA willfully ignored its obligations under the law by failing to repurchase the subject vehicle, forcing plaintiff to file a lawsuit.

On February 27, 2018, plaintiff filed her complaint in California Superior Court. Ullman Decl. ¶ 4. Shortly thereafter on April 2, 2018, BMWNA removed the case to the

Central District of California. *Id.* BMWNA's choice to remove the matter to federal court naturally increased the fees and costs necessary to resolve this matter. Plaintiff contacted BMWNA's counsel in early June to comply with the Order Setting the Rule 16 and Rule 26 Conference. *Id.* During this call, BMWNA opened the door to the possibility of a repurchase of plaintiff's vehicle. *Id.* BMWNA then followed up the call with an offer for repurchase. *Id.* Unsurprisingly, the offer of approximately eighteen-thousand dollars ("$18,000") was favorable to BMWNA as it contained no admission of liability, every statutory deduction possible, and no civil penalties despite BMWNA's willful conduct. As such, the offer was rejected and plaintiff was forced to continue advocating for her rights under the law.

Finally, after the Rule 26 Conference took place and further litigation and discovery occurred, BMWNA extended the Offer of Judgment. Ullman Decl. ¶ 5. Unlike the previous offer, the Offer of Judgment admitted liability and provided plaintiff over nine thousand ("$9,000") dollars more than the initial recovery amount of approximately $18,000. *Id.* As part of the Offer of Judgment, it was further stipulated and agreed upon that BMWNA would repurchase the vehicle, pay off the balance of the loan, and pay plaintiff's reasonable attorneys' fees and costs by agreement or by single noticed motion. *Id.* Based on the favorable numbers, plaintiff accepted the Offer of Judgment. In an attempt to avoid this motion, plaintiff attempted to negotiate the attorney fees and costs with defendant. Sadly, her reasonable demands were rejected.

Plaintiff now seeks the court's assistance in resolving the final issue of attorney's fees and costs. Plaintiff's attorneys, Lemon Law Aid, Inc., have billed or will bill a total of $28,376.50 on this matter and have incurred costs in the amount of $536.03. Ullman Decl. ¶ 6. With a multiplier or fee enhancement of .25, the total fees and costs award requested is $36,140.66. *Id.* Plaintiff made good faith efforts to negotiate and resolve the attorney's fees and costs issue short of this Motion, going as far as to offer to mediate the issue. *Id.* Unfortunately, BMWNA rejected those efforts and forced plaintiff to seek this

1  Court's aid. *Id.* Accordingly, plaintiff asks that this Court grant this motion and award
2  plaintiff $36,140.66 as the prevailing party in this matter.

## III. ARGUMENT

### A. Under both the Song-Beverly Consumer Warranty Act and the Offer of Judgment, Plaintiff is Entitled to Recover Reasonable Attorney's Fees and Costs

Plaintiff's Complaint was pursued and ultimately resolved based on the SBCWA and the Offer of Judgment ("Offer"). Under the SBCWA, the prevailing buyer "*shall* be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, *including attorney's fees based on actual time expended*, determined by the Court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." *Civ. Code* § 1794(d) [emphasis added]; *see also Nancy Goglin v. BMW of North America, LLC, et al.* (2016) 4 Cal.App. 5th 462. In conjunction with the SBCWA, the Offer clearly stipulated that plaintiff is entitled to recover her reasonable attorney's fees and costs by noticed motion. As such, the Court should look to the SBCWA in determining the recoverable amount of plaintiff's attorney's fees and costs.

The SBCWA is a manifestly remedial measure intended to protect the consumer, and it should be given a construction calculated to bring its benefits into action. See *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th at 990. In *Murillo*, the California Supreme Court endorsed the central role that the payment of attorney's fees and costs play in achieving the purposes of the Act:

"By permitting prevailing buyers to recover their attorney's fees in addition to costs and expenses our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible." *Id.* a 994.

Moreover, in making this endorsement, the Court sought to open the courtroom doors to consumers who could not otherwise afford to pay for attorneys to litigate such

cases on a non-contingent basis, as the fees and costs would easily exceed a consumer's recovery if they prevailed. *See Jensen v. BMW of North America* (1995) 35 Cal.App.4th 112, 138. This fee shifting provision also levels the playing field by discouraging manufacturers from attempting to use their superior resources to force consumers into inadequate settlements. Thus, to promote the underlying purpose of protecting consumers from defective products, this Court should approve the attorney's fees and costs to Plaintiff's counsel in full for their time expended and the expenses incurred in this case. *Civ. Code* § 1794(d); *Murillo*, 17 Cal.4th at 994; *Robertson v. Fleetwood Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 817.

### B. The Court Should Use the Lodestar Method to Determine Plaintiff's Reasonable Attorney's Fees and Costs

To determine a "reasonable attorney fee award, district courts generally start by calculating the lodestar amount, meaning the product of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly fee. See *Hensley v. Eckerhart* (1983) 461 US 424, 433-437; *City of Burlington v. Dague* (1992) 505 US 557, 561; *Perdue v. Kenny A. ex rel. Winn*, supra, 559 US at 552-553. The lodestar method is also the prevailing method of awarding attorney fees in SBCWA and California cases as well. See *Robertson* 144 Cal.App.4th, 818-819. *See also Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135 (California Supreme Court endorsing the lodestar method as the prevailing method for statutory fee awards); *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 997-998; *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 154.

The fee applicant bears the initial burden of substantiating the hours worked and the rate claimed. *Strange v. Monogram Credit Card Bank of Georgia* (7th Cir. 1997) 129 F3d 943, 945; See also *Flitton v. Primary Residential Mortg., Inc.* (10th Cir. 2010) 614 F3d 1173, 1178. However, plaintiff's counsel is not required to record in great detail how each minute of time was expended. *Flitton*, 614 F3d at 1178 (2010).

///

### *1. Plaintiff's Requested Hourly Rate is Reasonable*

The lodestar method involves "careful compilation of the time spent and reasonable compensation for each attorney. *Serrano v. Priest*, (1977) 20 Cal. 3d 25 (*Serrano III*); See also *Serrano v. Unruh* (1982) 32 Cal.3d 621. Both the United States Supreme Court and the California Supreme Court have held that lodestar fee rates are "calculated according to the prevailing market rates in the relevant community. *Blum v. Stenson*, (1984) 465 U.S. 886, 895; *Ketchum*, 24 Cal.4th at 1133. The proper reference point in determining an appropriate fee award is the rates charged by private attorneys in the same legal market as the prevailing counsel. *Trevinu v. Gates*, (9th Cir. 1996) 99 F.3d 911, 925.

Plaintiff has established the reasonableness of her requested rates through a declaration establishing the rates of seven California attorneys who specialize in lemon law cases in the same market. These attorney's rates range from $525 to $675 per hour. No doubt the effective hourly rate of some defense attorneys who handle lemon law cases on hybrid rate structures is even higher. The hourly rates requested by Lemon Law Aid, Inc. shareholder Joseph Kaufman ($505), associate attorney Joshua Ullman ($395), and paralegal Adrian Flansburg ($150) are at or below prevailing market rates and should not be reduced by this Court. Indeed, in the recent case of *Goglin,*, the Court found a lemon law rate of $575 to be reasonable. See *Goglin,* 4 Cal.App. 5th 462. Thus, the rates requested by plaintiff's attorneys in this case are much less than other attorneys in the market, making them reasonable in light of the results obtained and the expertise of each attorney displayed.

Moreover, in addition to the prevailing market rate, both state and federal courts have set forth a number of factors to consider when evaluating whether the requested hourly rate is reasonable. Some of these pertinent factors include (1) the skill required to perform the legal services properly (2) the extent to which the nature of the litigation precluded other employment by the attorneys and (3) the contingent nature of the fee award. *Serrano III*, 20 Cal.3d at 49; See also *Graham v. DaimlerChrysler*, (2004) 34

Cal.4th 553, 579; *Hensley v. Eckerhart*, (1983) 461 US 424, 430-434; *Carter v. Caleb Brett LLC,* (9th Cir. 2014) 757 F3d 866, 868-869.

### *a. The Contingent Nature of the Fee Arrangement Makes Plaintiff's Requested Rate Reasonable*

Plaintiff's attorneys took this case on a contingency basis, paid all costs and expenses associated with it on behalf of plaintiff, and assumed the full risk of the loss of these costs and expenses paid. In the legal marketplace, an attorney whose compensation is dependent on success and who takes significant risk should and does expect to receive a higher fee than an attorney who is paid at a market rate as the case goes along, win or lose. *Rader v. Thrasher* (1962) 57 Cal.2d 244, 253. The California Supreme Court in *Ketchum* reaffirmed these principles citing *Rader*, "[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable." *Ketchum*, 24 Cal.4th at 1132.

Here, BMWNA unilaterally dragged this case out for over six months in both state and federal court. While this was happening, plaintiff's attorney's costs and expenses continued to rise, all while facing the very real possibility that these costs and expenses would never be recovered. Furthermore, while BMWNA's attorneys were regularly paid for their time expended on this case, plaintiff's attorneys continued to absorb costs and expenses without any form of payment for their services provided. Thus, if plaintiff failed to prevail, her attorneys would have suffered a loss of many hours of uncompensated work and thousands of dollars of out of pocket expenses. Thus, the factors set forth in both *Serrano* and *Hensley* and the holdings in both *Ketchum* and *Rader* support plaintiff's position that the inherent risk associated with the contingent fee arrangement makes plaintiff's requested rate reasonable.

### *b. The Skill Displayed by Plaintiff's Attorneys Support the Requested Rate*

A court may take into account the skill of the attorneys when determining the reasonable attorney's fees. *La Mesa-Spring Valley School Dist. V. Otsuka* (1962) 57

-6-

Cal.2d 309, 316; See also *Hensley,* 461 US at 430-434; *Carter v. Caleb Brett LLC,* 757 F3d at 868-869.

In this case, plaintiff's large recovery was a direct result of the expertise and knowledge displayed by plaintiff's attorneys. BMWNA's initial offer of approximately eighteen thousand ("18,000") dollars included all statutory deductions, no admission of liability, and no civil penalties. After further negotiations, multiple demands, and significant dialogue between the parties, the Offer that was ultimately accepted by Plaintiff netted her over twenty-seven thousand ("$27,000") in total recovery. This is approximately $9,000 more than plaintiff was initially offered by BMWNA, and similarly $9,000 or so more than a statutory repurchase. Ullman Decl. ¶ 5. Plaintiff's attorney's experience and skills provided an exemplary result that BMWNA was initially unwilling to entertain. Simply put, plaintiff's attorneys' knowledge and expertise in the course of representation for plaintiff led to over a thirty ("30") percent increase in recovery. Accordingly, the skill displayed by plaintiff's attorneys support the requested rate.

### 2. The Actual Time Requested is Reasonable

The Court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case. *Moreno v. City of Sacramento,* (9th Cir. 2008) 534 F.3d 1106, 1112. An attorney's sworn testimony that that he took the time claimed is evidence of considerable weight on the issue of the time required. *Blackwell v. Foley,* (N.D. Cal. 2010) 724 F.Supp.2d 1068, 1081. To reduce the number of hours worked, it must appear that the time claimed is obviously and convincingly excessive under the circumstances. *Id.* See also *Moreno,* 534 F.3d at 1116.

Here, plaintiff's moving papers and declarations show that her counsel effectively and efficiently handled this matter by primarily assigning one associate attorney to handle the bulk of the work – discovery, research, pleadings, and motion drafting with oversight of the owner of the firm. Ullman Decl. ¶ 6. In addition, plaintiff's counsel exercised billing judgment by reducing the total billing for much of the work it performed to account for any inefficiencies. *Id.*

Moreover, it cannot be overstated that it was BMWNA, not plaintiff, that dragged out the litigation to the point of this motion. A party cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response. *Serrano*, 32 Cal.3d at 638. There is no denying that BMWNA failed to promptly repurchase the subject vehicle. In fact, rather than repurchase a vehicle that suffered from multiple repair visits for the same concerns and over sixty ("60") days out of service, BMWNA chose to litigate the case for over six months in two separate courts before finally admitting liability and extending the Offer. Having taken the bright line stance to litigate tenaciously to avoid its legal responsibilities under the law, BMWNA cannot reasonably complain about the time billed by plaintiff's attorneys.

Lastly, nothing under the law requires the submission of time records to prove the number of hours reasonably expended in litigation. See *Martino v. Denevi* (1986) 182 Cal.App.3d 553, 559; *Sommers v. Erb* (1992) 2 Cal.App.4th 1644, 1651. Nevertheless, plaintiff submitted detailed time records for all persons who have worked on this matter throughout the course of litigation. The time slips submitted reflect the actual time expended, and a description of the serviced billed in connection therewith. More importantly, it shows that the hours requested were not duplicative, redundant, or unnecessary. The billing is strictly limited to the work reasonably incurred in connection with the prosecution of this case. As such, the records are entitled to credence in the absence of a clear indication that the records are erroneous. See *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 396.

Plaintiff's counsel has and will have billed $28,376.50 in the course of litigating this case. Ullman Decl. ¶ 6. As set forth in accompanying declaration, plaintiff has further incurred $536.03 in costs in the course of litigation. Given all the work that went into prosecuting this case on behalf of plaintiff, the time and expenses sought by plaintiff's counsel are reasonable and were necessary.

///

///

-8-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

### C. The Attorney Fee Award Must Be Based on Actual Time Expended in Litigation and Should Not be Bound by the Amount of Recovery

Both state and federal law hold that there is no requirement that an attorney fee award be proportional to the amount of damages recovered. *Cowan v. Prudential Ins. Co. of America* (2nd Cir. 1991) 935 F2d 522, 528; *Combs v. City of Huntington, Tex.* (5th Cir. 2016) 829 F3d 388, 396; See also *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1508. In fact, with respect to lemon law cases, Courts have rejected the notion that the fee award must be proportionate to the amount of damages recovered. *Graciano,* Cal.App.4th at 164. In *Graciano*, the Court noted that "because this matter involves an individual plaintiff suing under consumer protection statutes involving a mandatory fee-shifting provision, the legislative policies are in favor of [Plaintiff's] recovery of all attorney fees reasonably expended, without limiting the fees to a proportion of her actual recovery." *Graciano* 140 Cal.App.4th at 164; *see also Robertson,* 144 Cal.App.4th at 817-823, where the Court rejected the argument that a six-figure attorney fee award under Song-Beverly was excessive in light of the modest consumer recovery.

Without fee shifting statutes, most consumers would be left with no recourse to enforce their rights against disproportionately funded manufacturers like BMWNA. California's legislature was aware of these concerns when they drafted the pro-consumer SBCWA. This notion is affirmed by the Court in *Murrillo v. Fleetwood Enterprises, Inc.*, where it noted that "by permitting prevailing buyers to recover their attorney's fees in addition to costs and expenses, our legislature has provided injured consumers strong encouragement to seek redress in a situation in which a lawsuit might not otherwise have been economically feasible." *Murillo,* Cal.4th at 989. Based on the foregoing, the proportionality of plaintiff's recovery to the requested attorneys' fees and costs should not be considered when determining plaintiff's attorney fee and cost award.

///
///
///

-9-

### D. The Court Should Grant a .25 Multiplier Based on the Delay in Payment and the Results Obtained

State and federal courts have found that a lodestar total may be enhanced by a number of different factors. One such factor is delay in payment of fees. Enhancement may be based on unanticipated delay, particularly where the delay is caused by the defense. *Perdue,* 559 US at 556.

As stated above it was BMWNA, not plaintiff, that dragged out the litigation to the point of this motion. There is no denying that BMWNA failed to promptly repurchase the subject vehicle. In fact, rather than repurchase a vehicle that suffered from excessive and repeat repair visits for the same concerns and over sixty ("60") days out of service, BMWNA chose to litigate the case for over six months in two separate courts before finally admitting liability and extending the Offer. For these reasons alone, plaintiff's request for a lodestar enhancement should be granted.

Moreover, another factor that should be considered for enhancement is the skill displayed and the result obtained. Fee enhancements or multipliers are warranted where exceptional skill is exhibited in obtaining the results. *Lealao v. Beneficial Cal. Inc.* (2000) 82 Cal.App.4th 19, 50; *Edgerton v. State Personnel Bd.* (2000) 83 Cal.App.4th 1350, 1363; *City of Oakland v. Oakland Raiders* (1988) 203 Cal. App.3d 78, 85. Plaintiff's large recovery was a direct result of the expertise and knowledge displayed by plaintiff's attorneys. As noted above, plaintiff's counsels' skill and experience led to over a 30 percent increase (approximately $9,000) in additional recovery to plaintiff. The exceptional skills displayed warrant an enhancement. Accordingly, plaintiff respectfully submits that a .25 multiplier is appropriate given BMWNA's egregious delay in resolving the claim and based on the exemplary skills and services achieved.

///
///
///
///

### E. Plaintiff is Entitled to An Award of Fees and Costs Incurred for This Motion and For All Further Work Required To Complete the Prosecution of This Case

Both state and federal courts have found that an attorney's fees award generally includes the time spent preparing and litigating a motion to obtain the award. See *Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2008) 523 F3d 973, 981; *Ketchum*, 24 Cal.4th at 1141. In *Ketchum*, the Court stated that a fee award should "include compensation for all hours reasonably spent, *including those necessary to establish and defend the fee claim.*" *Id.*

Plaintiff should not be penalized for BMWNA's unwillingness to pay her attorney's fees. Plaintiff met and conferred extensively with BMWNA throughout June, July, and August in an attempt to avoid this motion. Plaintiff also offered to allow a mediator to decide the issue, but to no avail. Ultimately, BMWNA rejected plaintiff's efforts to resolve the issue and forced her to file this motion. Plaintiff's attorneys should not be penalized for having to file the motion to collect what they are entitled to by statute and by the Offer. As such, plaintiff's fees and costs award should include all time expended on this matter, including the motion itself, the anticipated time spent on reviewing BMWNA's opposition, preparation of a reply, and appearance that the motion hearing. Ullman Decl. ¶ 13. There is little doubt that BMWNA's attorneys will be paid for their work, and it is only fair that plaintiff request the same.

Similarly, plaintiff anticipates that an additional ten ("10") hours of work will be expended in the course of completing the prosecution of the case. Ullman Decl. ¶ 14. This accounts for the completion of remaining settlement issues, coordination of and attendance the vehicle surrender, communications and coordination with defendant's surrender agent, back and forth communications and coordination with the assigned local agent, back and forth communications with the client regarding all the issues listed, ensuring that the settlement amount is paid and the loan paid off, preparing and filing the satisfaction of judgment, preparing and filing the dismissal, and any other remaining

-11-

issues. *Id.* Like the fees and costs associated with defending this motion, BMWNA's counsel's fees and costs will be paid for all of the remaining items listed here. Accordingly, plaintiff's counsel requests that it to be compensated for the same.

### IV. CONCLUSION

Plaintiff has and will have incurred $28,376.50 in attorneys' fees and $536.03 in costs in successfully prosecuting this action. With a .25 multiplier, plaintiff seeks a total fee and costs award of $36,140.66. BMWNA failed to comply with the law by not promptly repurchasing plaintiff's defective vehicle. Yet after hard work, solid strategy, and patience on behalf of plaintiff's counsel, BMWNA finally admitted liability and agreed to repurchase the subject vehicle and pay all of her reasonable attorneys' fees and costs as the prevailing party. As such, plaintiff respectfully requests that this Court order BMWNA to pay plaintiff $36,140.66 no later than 30 days from the date of this Court's order.

Date: August 6, 2018            LEMON LAW AID, INC.

By: _____
JOSEPH A. KAUFMAN
JOSHUA M. ULLMAN
Attorneys for Plaintiff
WEISI ZHANG

-12-

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2018, I filed the foregoing document **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF WEISI ZHANG'S MOTION FOR $36,140.66 IN ATTORNEY'S FEED AND COSTS AS THE PREVAILING PARTY** with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

_____
Dulce Rojas

**CERTIFICATE OF SERVICE**